## MRS. L. S. COCHRAN *et al v.* PATRICK HENRY.

[65 South. 213.]

1. ATTORNEY AND CLIENT. *Wills. Contracts. Lien. Right to probate will. Settlement of lawsuit.*

Where the sole beneficiary under an unprobated will contracted with an attorney for services for its probate, and obligated herself to pay to the attorney one-half of whatever might be decreed to be the interest of the beneficiary under such will and bargains, sells, assigns, transfers, and sets over to the attorney one-half of whatever lands, moneys, choses in action, and personal property she may be entitled to receive under a decree of court or settlement such a contract does not give to the attorney a lien on the property under the will, and he does not acquire an interest in the will, and cannot propound it for probate.

2. ATTORNEY AND CLIENT. *Contract. Settlement of lawsuit.*

A contract between attorney and client, whereby the client binds himself not to compromise or settle a pending or prospective lawsuit, is unenforceable.

APPEAL from the chancery court of Issaquena county. HON. E. N. THOMAS, Chancellor.

Suit by Patrick Henry against Mrs. L. S. Cochran and others. From a decree overruling the demurrer to complainant's bill, defendant appeals.

The facts are fully stated in the opinion of the court.

*McLaurin, Armistead & Brien* and *McLaurin & Thames,* for appellant.

The attorneys for appellants filed an elaborate. brief citing 3 A. and E. of Law (2d Ed.), p. 337;

4 Cyc., p. 45 et seq.; Christmas v. Russell, 14 Wall.
69-84, 20 L. Ed. 762; Trist v. Child, 21 Wall. 441, 22 L.
Ed. 623; Dillon v. Barnard, 21 Wall. 430, 22 L. Ed. 673;
25 Cyc. 660 et seq.; Wright v. Ellison, 1 Wall. 16, 17 L.
Ed. 555; Pratt v. Hargreaves et al., 76 Miss. 955-969, 25
So. 658, 71 Am. St. Rep. 551; Jones v. Moseley, 40 Miss.
261-265, 90 Am. Dec. 327; Slocum v. Grandin, 38 N. J.
Eq. 485-488; Ex parte Crafts, 28 S. C. 287, 5 S. E. 718;
In re Miller's Estate, 166 Pa. 97, 31 Atl. 58-62; Fotheree
v. Lawrence, 30 Miss. 416; Rothschild v. Hatch, 54 Miss.
554; Shirk v. Neible, 156 Ind. 66, 59 N. E. 281, 83 Am. St.
Rep. 150; Matter of Snyder, 190 N. Y. 66, 82 N. E. 742,
14 L. R. A. (N. S.) 1101, 123 Am. St. Rep. 533, 13 Ann.
Cas. 441; Davy v. Fidelity & Casualty Insurance Co., 78
Ohio St. 256, 85 N. E. 504, 17 L. R. A. (N. S.) 443, 125
Am. St. Rep. 694; Thompkins v. Nashville etc., Railway
Co., 110 Tenn. 157, 72 S. W. 116; Huber v. Johnson, 68
Minn. 74, 70 N. W. 806, 64 Am. St. Rep. 456.; Breathitt
Coal, Iron & Lumber Co. v. Gregory (Ky.), 78 S. W. 148;
Johnson v. Ravitch, 113 App. Div. 810, 99 N. Y. Supp.
1059; Id., 113 App. Div. 1123, 100 N. Y. Supp. 1123; Well-
er v. Jersey City, H. & P. St. Railway Co., 68 N. J. Eq.
659, 61 Atl. 459, 6 Ann. Cas. 442; Id., 66 N. J. Eq. 11, 57
Atl. 730.

Catchings & Catchings, for appellee.

The attorneys for appellee filed an elaborate brief cit-
ing Hoffman v. Vallejo, 45 Cal. 564; Harris v. Oil Mills,
78 Miss. 603, 30 So. 273; Holmes v. Evans, 129 N. Y. 140,
29 N. E. 233; Wells v. Railroad Co., 96 Miss. 193, 50 So.
628, 27 L. R. A. (N. S.) 404; 4 Cyc. p. 42 et seq.; 19 Am.
and Eng. Ency., p. 13; Nutt v. Knut, 200 U. S. 12, 26 Sup.
Ct. 216, 50 L. Ed. 348; Jeffries v. Mutual Ins. Co. of N.
Y., 110 U. S. 305, 4 Sup. Ct. 8, 28 L. Ed. 156; Gulf, C. & S.
F. R. Co. v. Miller, 21 Tex. Civ. App. 609, 53 S. W. 709;
Walker v. Walker, 125 U. S. 342, 8 Sup. Ct. 929, 31 L. Ed.
769; St. L. M. & Co. v. Montana Min. Co., 171 U. S. 650,

19 Sup. Ct. 61, 43 L. Ed. 320; *U. S.* v. *Trans-Mo. Freight Ass'n,* 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007; *Ft. Worth R. Co.* v. *Carlock & Gillespie,* 33 Tex. Civ. App. 202, 75 S. W. 931; *Davis* v. *Webber,* 66 Ark. 190, 49 S. W. 822, 45 L. R. A. 196, 74 Am. St. Rep. 81; *Texas Central R. Co.* v. *Andrews,* 28 Tex. Civ. App. 477, 67 S. W. 923; *Railroad Co.* v. *Miller,* 21 Tex. Civ. App. 609, 53 S. W. 709.

COOK, J., delivered the opinion of the court.

Charles C. Sanford, a white man died May 27, 1912, owning two valuable plantations situated in Sharkey and Issaquena counties and also personal property of considerable value. Some years before his death he executed his last will and testament, devising and bequeathing to Lillie Daisy Brown, a negro woman, his entire estate, real and personal, reciting in his will that it was his purpose thereby to reward a faithful servant. The testator's three sisters and a brother survived him, they being his heirs at law.

Lily Daisy Brown employed Judge Patrick Henry, an attorney at law, to represent her in and about the probating of the will. The contract of employment was reduced to writing and signed by Lily Daisy Brown, and is as follows:

"State of Mississippi, County of Warren. For and in consideration of five dollars cash in hand paid, the receipt whereof is hereby acknowledged, and for the further consideration of the services rendered to me and to be rendered to me by Pat Henry, attorney at law, of the city of Vicksburg, county and state aforesaid, representing me and my interest which that certain will and writing signed, published, executed, and declared on the 14th day of June, 1900, by one C. C. Sanford, deceased, wills, devises, and bequeaths me and in enforcing the provisions of said will, by which and through which all of the estate, both real and personal, of the said C. C. Sanford,

late of the county of Issaquena, state of Mississippi, was by said will devised and bequeathed to me.

"I now of my own free will and accord do, in consideration as aforesaid, hereby agree, obligate and bind myself to pay to said Pat Henry, attorney at law as aforesaid, one-half (½) of whatever the courts of the state of Mississippi may by decree or judgment or otherwise declare to be my interest in said estate of the said C. C. Sanford, so willed, bequeathed, and devised to me as aforesaid. And I hereby, in consideration as aforesaid, further obligate myself not to compromise, assign, or sell, or by any writing which may operate as an assignment, sale, or compromise, any of my said interest in said estate without the joint signature and the consent in writing of the said Pat Henry aforesaid is first obtained and given by him.

"The intention and purposes of this writing being that I hereby bargain, sell, assign, transfer and set over to the said Pat Henry one-half (½) or fifty (50) per cent. of whatever in lands, moneys, choses in action and personal property that I may be entitled to receive by and through that certain writing dated on the 14th day of June, 1900, and signed and declared by C. C. Sanford to be his last will and testament, either by judgment or decree of any court, or by whatever compromise or settlement which may be entered into by me after the consent of the said Pat Henry is first had and obtained. And to enforce the provisions of this agreement I hereby acknowledge a lien upon all property, both personal and real, choses in action and otherwise which may be bequeathed or adjudged to be coming to me through the provisions of said will, and I hereby further nominate and appoint the said Pat Henry my full, lawful, and legal attorney in fact to sign my name, and to receipt for any moneys which may be or hereafter become due to me by and through the said will of the said C. C. Sanford, deceased, and do hereby give said attorney full power to commence or institute

action either at law or equity or to defend or litigate any action or suit that may be brought against me as the devisee, legatee, or the beneficiary under the will of said C. C. Sanford as aforesaid, in any court of law or equity with full power to said attorney of accepting or serving affidavits on oath; giving to the said Pat Henry full and unlimited power to act for me and in my stead, with the power to him to sign my name to any deed or other instrument of writing, or to collect any funds or any amount in lieu of any property to which I may be entitled, and to sign my name and receipt in satisfaction thereof. And with the power to him, the said Pat Henry, to compromise or arbitrate any litigation or right of action or rights which I may have under and by virtue of the said will so signed on the 14th day of June, 1900, by the said C. C. Sanford.

"And in consideration of all of which I hereby promise to corroborate and approve of all actions done and performed by him in this regard, in the matter of the said estate, as same were done and performed by me, all interlineations made and written before the signing hereof.

"Witness my signature this 15th day of June, A. D., 1912.                                LILLIE DAISY BROWN.
"Witnesses:
   "D. V. Solari.
   "J. B. Benton."

This instrument was properly acknowledged and duly recorded on the record of deeds of Issaquena county on the 6th day of July, 1912.

The will was in due time offered for probate. In the meantime the brother and sisters of the testator, anticipating that some will might be offered for probate, had filed with the clerk this objection to the probating of the will of C. C. Sanford, vix.:

"To the Honorable Chancery Court of Issaquena County, Mississippi: We, the undersigned attorneys for

Mrs. L. S. Cochran, Robert Sanford, Mrs. H. C. Burch, and Mrs. Alberta Foolkes, heirs of C. C. Sanford, deceased, having become advised that there is probably a pretended will said to have been left by the said C. C. Sanford. Now, therefore, we, as said attorneys aforesaid, acting for the heirs aforesaid, do hereby protest against and object to the probating of said will, according to section 1990 of the Code of 1906, if said will be filed for probate.''

It seems that the clerk, on June 22, 1912, admitted to probate the document purported to be the will of Sanford, but declined to issue letters testamentary to Lillie Daisy Brown, who was named therein as executrix, without bond. It appears that the objection to the probate was treated as a *caveat*, but no issue *devisavit vel non* was ever made up or tried.

On the 9th day of July, 1912, Lillie Daisy Brown executed the following deed of conveyance, viz.:

''I convey and quitclaim unto C. W. Cochran all right, title, claim, or interest I may own or have any right to in that certain tract of land situated in Issaquena county, Mississippi, and known as the 'Dixie Plantation,' which plantation was owned by the late C. C. Sanford at the date of his death, and for the same consideration I convey, sell, and deliver by this instrument all right, title, claim, or interest I may own or have any right to in all the personal property of every kind and description owned by me or the late C. C. Sanford at the date of his death, and situated on said 'Dixie Plantation,' and in the possession or use of either myself or the said C. C. Sanford at the time of his death; it being my intention by this instrument to convey, sell, and deliver to the said C. W. Cochran all right, title, claim, or interest I may own or be entitled to in all of said real and personal property owned by the said C. C. Sanford at the time of his death, and attempted to be given to me by a will of the said C. C. Sanford which I have exhibited for probate in the

chancery clerks office of said Issaquena county, Missis-
sippi; also all other personal property situated on said
'Dixie Plantation' which I may own or have any right,
title, or interest in, independent of the said will of the
said C. C. Sanford, except my household effects.

"Witness my signature this the 9th day of July, 1912.

LILLIE DAISY BROWN."

The bill of complaint in this case was filed by Judge
Henry, and, after setting out the facts as above stated,
together with other facts not necessary to state, it is
alleged that the contract executed by Lillie Daisy Brown
conveyed to him a one-half interest in the land belonging
to C. C. Sanford, deceased, and devised by deceased to
Lillie Daisy Brown; that her deed of conveyance to C.
W. Cochran, executed on the 9th day of July, 1912, did
not convey his interest in the land; that by the terms of
her contract Lillie Daisy Brown did not have any power
to compromise or settle the matters growing out of the
objections to the probate of the will of Sanford; that his
contract with Lillie Daisy Brown was of record when
she executed the conveyance to Cochran, and, besides,
Cochran had actual knowledge of the existence and of
the terms of the contract. In short, the bill of complaint
avers that Judge Henry, by the contract, acquired an
interest in the land, and that Lillie Daisy Brown's deed
to C. W. Cochran did not, in any way, affect his interest,
and this, being true, the court was asked to declare the
instrument offered for probate as the last will and testa-
ment of C. C. Sanford, and that the same be admitted to
probate.

The brothers and sisters of C. C. Sanford and C. W.
Cochran were made parties defendant to the proceed-
ings, and a demurrer was interposed by them to the bill
of complaint, assigning the following grounds:

"(1) Because there is no equity on the face of the bill.

"(2) Because by the bill and exhibits thereto the ob-
ligation pleaded, whereby it is set up that Lillie Daisy

Brown, the party with whom the complainant is alleged to have had the contract, obligated herself not to compromise, assign, or sell, or by any writing which may operate as an assignment sell or compromise, any of said interest in said estate without the joint signature and consent in writing of the said Pat Henry (complainant) aforesaid first obtained and given by him, is void and of no binding effect upon the said Lillie Daisy Brown to prevent her from selling her interest to anybody she chose.

"(3) Because the assignment claimed to have been taken from Lillie Daisy Brown by the complainant, Patrick Henry, is of date the 15th day of June, 1912, and is inoperative and void, for the reason that said interest was not taken 'after suit had been filed thereon,' as provided by section 718 of the Code of 1906.

"(4) Because by the terms of said contract had with complainant and Lillie Daisy Brown of date June 15, 1912, it is provided that the said Lillie Daisy Brown, obligates and bind herself to pay said Pat Henry, complainant, 'one-half of whatever the courts of the state of Mississippi may, by decree or judgment, or otherwise, declare to be my (her) interest in said estate of said C. C. Sanford,' and said contract is of no force or operation without such decree or judgment.

"(5) Because by the terms of said contract it is provided that the said Lillie Daisy Brown sells, assigns, transfers, and sets over to the said Pat Henry 'one-half or fifty per cent. of whatever in lands, money, choses in action, and personal property that I (she) may be entitled to receive by and through the will of the said C. C. Sanford, either by judgment or decree of any court, or by whatever compromise or settlement which may be entered into by me after the consent of the said Pat Henry first had and obtained,' and by this provision in said Lillie Daisy Brown's contract she reserved the right to compromise and sell her said interest

as claimed in the estate of C. C. Sanford; the provision attached requiring the consent of said Pat Henry being void under the law, and reserving the right by said contract to compromise and sell her interest, a sale by her divested any interest that the said Pat Henry might have in said land under said contract.

"(6) Because said writing signed by Lillie Daisy Brown, called a 'power of attorney and contract' by the parties in its caption, is not an absolute assignment of any interest in the property claimed to be devised and bequeathed to her, by the said C. C. Sanford by his alleged will, but is simply a contract to pay half of whatever sum she might recover by judgment or decree or compromise or settlement; and a lien is sought to be given in the face of this contract 'on all property, both real and personal, choses in action and otherwise which may be bequeathed or adjudged to be coming to me (her) through the provisions of said will (of the said C. C. Sanford),' and the provision declaring a lien divests the right of any absolute assignment to the said Pat Henry, and he therefore has no interest in the property itself by virtue of said contract; said contract executed by the said Lillie Daisy Brown on the 15th day of June, 1912, to the said complainant, Patrick Henry, is, in legal effect, nothing more than a contract of employment of an attorney, and conveys no interest in the land whatever, as appears from the face of the instrument itself.

"(7) Because said contract signed by the said Lillie Daisy Brown on the 15th day of June, 1912, is void as an assignment of any interest in the property described in the bill.

"(8) Because the complainant has no interest in the property described in the bill which would entitle him to maintain this suit for the probate of the alleged will of the said C. C. Sanford, and is not entitled to maintain said bill for said purpose.

107 Miss. 16

"(9) Because said contract executed by the said Lillie Daisy Brown on the 15th day of June, 1912, made exhibit to the bill, is nothing more than a written contract for the employment of an attorney and an effort to give a lien on property not described, to secure said attorney's fee, and, in legal effect, has no operation to transfer to said attorney any interest or title in the property described in the bill in this cause.

"(10) That the complainant has no right to maintain this bill.

"(11) And for other causes to be shown on the hearing."

The contract between Lillie Daisy Brown and her attorney, Judge Henry, analyzed in the light of the allegations of the bill of complaint filed by Judge Henry, amounts to about this: The testator being a white man, it was not unnaturally assumed that his heirs at law would contest his will, in which he devised and bequeathed to his servant, a negro woman, his entire estate, and, in anticipation of this event, Judge Henry had the beneficary of the will to "obligate and bind" herself "to pay to said Pat Henry, attorney at law as aforesaid, one-half of whatever the courts of the state of Mississippi may by decree or judgment or otherwise declare to be my interest in the said estate of the said C. C. Sanford." Thus far the contract is unambiguous and explicit. Judge Henry's compensation for his services to be rendered is fixed at one-half of what the future lawsuit would pan out to Lillie Daisy. There is no attempt to convey a present interest in the lands of the testator; nor is there any conveyance of the cause of action. If the courts should decree that the will offered for probate was the last will and testament of C. C. Sanford, she would thereby be invested with the title to all of the estate of the said Sanford, and she would then be bound to convey to Judge Henry an undivided one-half interest in the same, or pay to him the value of such interest.

It is contended, however, that a subsequent clause of the contract interprets the purpose of the contracting parties, and clearly conveys or assigns to Judge Henry a one-half interest of the property. This clause reads this way:

"The intention and purposes of this writing being that I hereby bargain, sell, assign, transfer and set over to the said Pat Henry, one-half (½) or fifty (50) per cent. of whatever in lands, moneys, choses in action and personal property that I may be entitled to receive by and through that certain writing dated on the 14th day of June, 1900, and signed and declared by C. C. Sanford to be his last will and testament, either by judgment or decree of any court, or by whatever compromise or settlement which may be entered into by me after the consent of the said Pat Henry is first had and obtained."

We find ourselves unable to so construe this clause. While the words "bargain, sell, assign, transfer, and set over" are employed, it seems clear there is nothing more than an agreement that Judge Henry was to get one-half of what the courts should decree to Lillie Daisy, or one-half of whatever she could secure by compromise or settlement. The interpretative clause does not add to or subtract from the clause it undertakes to define, and merely expresses the same thing in different language. The briefs both for appellants and appellee are exceptionally able and exhaustive upon every phase of the controversy.

The decisions of all the courts upon contracts of this character are collated and analyzed in the briefs, but it is believed that the question here involved is put at rest in this state by the decision of this court in *Mosely* v. *Jamison,* 71 Miss. 456, 14 So. 529. The contract between the attorney and client construed in *Mosely* v. *Jamison, supra,* was in parol, but it was in all essentials the same as the contract we are considering in this case. The opinion of the court in that case is short, but, read in connection with the statement of facts, there is no room

for doubt that the contract there, as here, was that the attorney was to get for his services one-half of the recovery, and that the client had contracted that he would not compromise the suit without the attorney's consent. In *Mosely* v. *Jamison,* the controversy was between the attorney and client, and the court held that the client had a right to compromise his lawsuit without the consent of his attorney, although he had agreed not to do so, and, further, that the defendant in the suit was discharged by the settlement. This case seems to be in harmony with the weight of authority that a contract between attorney and client, whereby the client binds himself not to compromise or settle a pending or prospective lawsuit, is unenforceable. Be that as it may, *Mosley* v. *Jamison* so declares the law to be in this state. *Harris* v. *Hazelhurst Oil Mill,* 78 Miss. 603, 30 So. 273, and *Wells* v. *Edwards House,* 96 Miss. 191, 50 So. 628, 27 L. R. A. (N. S.) 404, are not in conflict with *Mosely* v. *Jamison,* *supra,* and neither are they applicable to the facts of the present case.

It may be that Judge Henry is entitled to recover one-half of the amount which was paid to Lillie Daisy Brown for her quitclaim of her interest in the estate of Sanford, but this question is not involved in this proceeding. The bill of complaint proceeds upon the theory that Judge Henry owns a one-half interest in the estate of Sanford, and, in order to make his title to the land clear, he asks the court to so decree, and also propounds the will for probate upon the theory of his interest in the estate bequeathed by the will. If the contract executed by Lillie Daisy Brown does not convey to Judge Henry an interest in the property in controversy, and does not assign to him any part of the cause of action, it follows that he is not "interested in the will," and therefore cannot propound it for probate.

The decree of the chancellor overruling the demurrer. is reversed, and the bill dismissed.

*Reversed.*